CLARK v. CITY OF GRAND RAPIDS.

1. DEEDS—CONDITIONS SUBSEQUENT—REVERTER.
   Ordinarily the use of the word "condition" in a deed does not indicate the existence of a condition subsequent without the presence of words of reverter.

2. SAME—CONDITIONS SUBSEQUENT STRICTLY CONSTRUED.
   Conditions subsequent, contained in a deed, are not favored in law and are strictly construed.

3. SAME—CONDITIONS SUBSEQUENT—CONSTRUCTION—COVENANT.
   A provision in a deed as to use will be construed as a covenant rather than a condition subsequent, if possible, and in doubtful cases, held to be a covenant.

4. SAME—CONDITION SUBSEQUENT—EVIDENCE.
   The intention of the grantor in a deed to create a condition subsequent must be clearly and definitely shown.

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 14 Am Jur, Covenants, Conditions, and Restrictions § 3.
[7–9] 1 Am Jur, Abandonment § 17.
[9, 10, 14, 15, 17] 39 Am Jur, Parks, Squares, and Playgrounds § 33.
[10, 14, 15, 17] 1 Am Jur, Abandonment §§ 13–15; 16 Am Jur, Dedication § 65.
[11, 12] 16 Am Jur, Dedication §§ 2, 8, 31.
[16] 39 Am Jur, Parks, Squares, and Playgrounds § 2.
[18] 3 Am Jur, Appeal and Error § 821.
[19] 18 Am Jur, Ejectment § 20.

5. SAME—REVERTER—CONSTRUCTION OF DEED—CONDITIONS.:
    Clause of deed wherein it was stated that if property conveyed
        for park and recreation purposes was not accepted by city
        that it should revert to grantor pertained to clause of deed
        reciting purpose of conveyance and not other· so-called con-
        ditions, some of which were reservations.

6. SAME—CONSTRUCTION—CONDITIONS SUBSEQUENT.
    Defendant city, grantee in deed of land conveyed to its grantor
        for park and recreation purposes *held*, not to have estopped
        itself from insisting there was but 1 condition. subsequent
        merely by references to 8 enumerated clauses as "conditions"
        in pleading.

7. SAME—REMEDY FOR BREACH OF COVENANT.
    Remedy of plaintiffs in ejectment action was in chancery for
        any breach of covenant, where. condition of sole condition· sub-
        sequent had, been met by defendant city's acceptance of
        property for. park and recreation purposes.

8. DEDICATION—ABANDONMENT—BURDEN OF PROOF.
    Burden of proof of· abandonment of· property conveyed to, and
        accepted ·by, defendant city for park and recreation pur-
        poses was upon plaintiffs, heirs of grantor, claiming such
        abandonment.

9. SAME—ABANDONMENT—EVIDENCE.
    Burden of proof that property conveyed to, and accepted by,
        defendant city for park and recreation purposes had been
        abandoned was not sustained, where it was not shown that
        such use had wholly failed.

10. SAME—ABANDONMENT—MISUSE—NONUSE.
    Neither misuse nor nonuse of property· is sufficient to consti-
        tute an abandonment of land dedicated to public use so as to
        work a reverter to the dedicators.

11. SAME—ACCEPTANCE OF TRACT FOR PARK AND RECREATION PUR-
    POSES.
    A deed to a nonprofit corporation on the express condition it
        was to be turned over to city for park and recreation pur-
        poses and which was accepted by the city for such purposes
        constituted a completed dedication to the public for all
        practical purposes.

12. SAME—DEFINITION.
    A dedication is merely an appropriation of land to some public
        use, accepted for such use by or in behalf of the public.

13. SAME—STATUTES—COMMON LAW—ABANDONMENT—CERTAINTY OF TITLE.

No distinction between a statutory dedication and common-law dedication is made for the 'purposes of the law of abandonment as the need for certainty of title exists equally in both instances.

14. SAME—ABANDONMENT—EVIDENCE.

Neglect of 264-acre property, dedicated for park and recreation purposes, by failure to provide a caretaker or make improvements or repairs did not effect an abandonment of property and cause it to revert to the dedicator's heirs, where the beautiful natural woodland remained and was a source of great delight to students of natural history who sought untouched conditions of plant life.

15. SAME—ABANDONMENT—TRANSFER BY CITY TO STATE—PARKS.

Transfer of 264-acre tract from city to the State conservation commission and retransfer to city did not effect an abandonment of the use of the tract for park and recreational purposes by reason of the State's use of it for a woodland preserve, as a park may be a woodland preserve as well as a landscaped playground.

16. WORDS AND PHRASES—PARKS.

A park is a pleasure ground for the recreation of the public to promote its health and enjoyment, a place open to everyone for purposes of pleasure, exercise, amusement or ornament or to which the public may resort for recreation, air and light.

17. DEDICATION—ABANDONMENT—RELINQUISHMENT OF ADJACENT RIGHT-OF-WAY TO PARK.

A city's relinquishment of right-of-way adjoining 264-acre tract of land in another county which had been dedicated and accepted for park and recreation purposes did not constitute an abandonment of the right to use the entire park in any manner, where such relinquishment was at least partly motivated by a desire to preserve a portion of the park in a natural state.

18. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATEMENT OF QUESTIONS INVOLVED—REASONS AND GROUNDS FOR APPEAL.

Whether or not State conservation commission's reconveyance of property to city of property outside the city limits but dedicated to and accepted by the city for park and recreation purposes was not properly before the Supreme Court,

where it was not raised in the statement of questions involved or the reasons and grounds for appeal.

19. EJECTMENT—DEFECTIVE TITLE OF DEFENDANT—PARK—PARTIES.
   Any possible question of the power of the State conservation commission to reconvey property theretofore conveyed to it by a city which had acquired it from grantee of plaintiffs' ancestor and which had been dedicated for park and recreation purposes may only be raised by the State and not by plaintiffs in their action of ejectment against city as the plaintiffs may recover only on the strength of their own title and not because of any alleged weakness in the title of the defendant city.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted June 4, 1952. (Docket No. 27, Calendar No. 45,431.) Decided October 6, 1952.

Ejectment by Minnie R. Aman Clark and others against City of Grand Rapids to gain possession of real estate. Judgment for defendant. Plaintiffs appeal. Affirmed.

*L. H. Grettenberger,* for plaintiffs.

*Fred N. Searl,* City Attorney, and *George R. Cook,* Assistant City Attorney, for defendant.

BUTZEL, J. Jacob Aman, a widower, in 1926 quitclaimed a 264-acre tract in Ottawa county about 5 miles west of Grand Rapids, Michigan, to the Grand Rapids Park and Boulevard Association, a private nonprofit corporation. The provisions of such deed material here are as follows:

"This deed is given upon the following conditions:
"1. This conveyance is made with the understanding that the above described property shall be turned over to the city of Grand Rapids, Michigan, for park and recreation purposes subject to the below conditions within 1 year from the date of this instrument or as soon thereafter as is practicable. 2. The

grantor reserves a life estate in the following described portion of said land and premises, to-wit: The house, barn and outbuildings and the land surrounding the same, comprising about 10 acres and being 35 rods east and west and 45 rods north and south, lying in the southwest corner of said premises. 3. The grantor reserves the right to cultivate and plant any of the above described premises not theretofore improved or used by the second party for park and recreation purposes; and further reserves the right to cut and use such matured wood and timber as he may need for his own domestic use. 4. The grantee is to spend $2,000 in developing and improving the property within 2 years from the date hereof, said moneys to be spent under the supervision and in accordance with the wishes of the grantor. 5. The name to be given the premises conveyed shall be Aman Valley or some other name to be selected or approved by the grantor if he so desires. 6. The property hereby conveyed shall forever be used for park and boulevard purposes only, subject to the above conditions, and the trees and timber thereon shall be preserved and handled in accordance with the best forestry practices. 7. The grantor reserved the right to be buried upon the premises at a spot now designated by a stake, said spot to be dedicated as the grantor's final burial place and to be preserved, protected and maintained in a fitting and proper way by the party of the second part forever. 8. If said proposition is not accepted by the city of Grand Rapids, Michigan, as specified, said property shall revert back to said first party.

"Together with all and singular　＊　＊　＊　To Have and To Hold the said premises to the said party of the second part and its successors and assigns to the sole and only proper use, benefit and behoof of the said party of the second part, its successors and assigns forever."

By deed of September 7, 1926, the corporation conveyed the property to the city of Grand Rapids,

which by official proceedings accepted the land for park purposes. In a previous case involving different parties, land and facts, but involving a similar question, we held that the Grand Rapids Park and Boulevard Association had authority to convey premises to the city of Grand Rapids for park and boulevard purposes and that the city had the authority to accept the conveyance. *Schneider* v. *City of Grand Rapids,* 211 Mich 399.

The testimony as to the use and care the park received through the years is voluminous. It appears from a careful examination thereof that during the first years the city of Grand Rapids maintained the park, it was greatly improved and well policed and supervised. At first Jacob Aman himself supervised the property. Later, under city supervision, numerous picnic, camping and playground facilities were installed and the park was landscaped, all at considerable expense to the city. When it failed to dedicate Jacob Aman's grave in accordance with the terms of his deed, his heirs protested, and on September 18, 1930, the property was formally dedicated as "Aman Park," with appropriate ceremonies. It was maintained and supervised during the 1930's, but for some 8 years prior to the time of the trial of the instant case, no caretaker had been in charge of the park and no further improvements or repairs were made on the property.

Jacob Aman in 1911 had obtained a right-of-way through adjoining property as a convenient means of access to part of Aman Park. The right-of-way was not expressly assigned to the city. The city failed to maintain such way and on February 29, 1940, relinquished the same on the advice that that portion of the park would look more unspoiled and natural if all artificial improvements were discontinued. Soon thereafter, the man-made improvements in all the park fell into disrepair although the

beautiful natural woodland remained and was a source of great delight to students of natural history who sought untouched conditions of plant life. After the removal of the caretaker, the park became often the scene of wild carousals, drinking, midnight campfires, auto races, et cetera. Policing authorities were confused as to the jurisdiction over property belonging to, but outside of, the city, so no arrests were made. After a protest from the citizens adjoining the park, and upon being urged by plaintiffs' attorney, the city of Grand Rapids erected a barricade to keep out cars and to allow only people on foot to enter the park. Plaintiffs later sought to completely close the park to the public.

In 1949, the city of Grand Rapids began negotiations with the State conservation commission in an attempt to exchange Aman Park for some State land within the city limits of Grand Rapids. On July 14th, the State conservation commission accepted the city's offer to deed the park to the State. In the memorandum filed with the conservation commission which was the basis for its action taken July 14, 1949, it was stated:

"The city of Grand Rapids has offered the above described property to the State of Michigan for such conservation uses, *within the stipulations of the title,* as the department may deem feasible. * * * The city no longer desires to maintain this property as part of its city park system even though some development and improvement work has been done in the form of road and trail construction and reforestation. * * *

"According to the stipulations in the chain of title the donors require that this land shall be used for park purposes. * * *. It appears among other things that this property would adapt itself as a demonstration area for the practice of forest management of southern Michigan woods in connection

with the forestry division's program with the owners of woodlots in southern Michigan." (Italics ours.)

After the conveyance to the State, the 4 children and only heirs of Jacob Aman, plaintiffs herein, proceeded to give notices of forfeiture and began the instant ejectment proceeding on April 1, 1950. The conservation commission, evidently uncertain as to the exact requirements of the deed, reconveyed to the city of Grand Rapids on September 1, 1950. The case was discontinued as to the defendant conservation commission but was continued as to the city of Grand Rapids, which had been a defendant on its own motion. It thus became the sole defendant.

Two questions are decisive here: Has there been a breach of a condition subsequent in the deed? Has there been an abandonment of the property by the public such as to work a reverter to the dedicators?

Plaintiffs contend that the 8 "conditions" set forth in the deed of Jacob Aman (quoted *supra*) are conditions subsequent, the nonfulfillment of any of which will work a reverter to the heirs. We do not find that such a construction is permissible under the laws of Michigan. An examination of the terms of the deed itself show how unlikely it is that such could have been meant. It is at once obvious that "conditions" 2, 3 and part of 7, *supra,* are reservations and not conditions at all. It is also noteworthy that "condition" 8, *supra,* is the only "condition" embodying a reverter clause. The absence of a reverter clause is ordinarily controlling against construction of a provision as a condition. See *Adams* v. *First Baptist Church of St. Charles,* 148 Mich 140 (11 LRA NS 509, 12 Ann Cas 224). The fact that 1 "condition" prescribes forfeiture is more significant when we consider that the other "conditions" do not contain a forfeiture or re-entry clause. See *Rhines* v. *Consumers' Power Co.,* 259 Mich 236. Ordinarily the

use of the word "condition" in a deed does not indicate the existence of a condition subsequent without the presence of words of reverter.

It is well settled that conditions subsequent are not favored in law and are strictly construed. See *Barrie* v. *Smith*, 47 Mich 130; *Adams* v. *First Baptist Church of St. Charles, supra; County of Oakland* v. *Mack*, 243 Mich 279; and *Central Land Co.* v. *City of Grand Rapids,* 302 Mich 105 (144 ALR 478). The latter case is a striking example of the rule. There, land was given to the city of Grand Rapids with the express requirement that it be used for park purposes or it would revert to the grantor. We held that a lease by a city to drill for oil on that property did not constitute a breach where the use did not interfere with the main purpose of the park. For this reason, a provision in a deed as to use will be construed as a covenant rather than a condition subsequent, if possible. In doubtful cases, the writing will be held to be a covenant. See *Smith* v. *Barrie,* 56 Mich 314 (56 Am Rep 391); *Blanchard* v. *Detroit, L. & L. M. R. Co.,* 31 Mich 43 (18 Am Rep 142); and *Detroit Union Railroad Depot & Station Co.* v. *Fort Street Union Depot Co.,* 128 Mich 184. This is particularly true if there is no provision for forfeiture in case of failure to continue the use, as is the case here.

Plaintiff cites *Epworth Assembly* v. *Ludington & Northern Railway,* 236 Mich 565, which may be quickly distinguished as there was an express reverter clause contingent on the cessation of the use. Such a situation does not exist here. Similarly, *Blanchard* v. *Detroit L. & L. M. R. Co., supra; Jones* v. *Van Bochove,* 103 Mich 98, and *Puffer* v. *Clark,* 202 Mich 169, are valuable statements of the general rules governing conditions subsequent but not controlling here.

It appears then that the intention of the grantor to create a condition subsequent must be clearly and definitely shown. It has not been shown here. Plaintiff argues that the reverter clause in "condition" 8 applies as well to all of the "conditions." However, an examination of "condition" 8 reveals that the words:

"If said proposition is not accepted by the city of Grand Rapids, Michigan, as specified, said property shall revert back to said first party,"

refer only to "condition" 1:

"This conveyance is made with the understanding that the above described property shall be turned over to the city of Grand Rapids."

It does not mean that once the property was accepted by the city of Grand Rapids that a failure to observe any of the other "conditions" would work a reverter.

Plaintiff has pointed out that a number of times the conservation commission and the city of Grand Rapids in their pleadings referred to the 8 provisions in the deed as "conditions." That, however, is not an admission that they were conditions subsequent, the breach of which would work a reverter. Defendant made no admissions in its pleadings that estop it from insisting there was only 1 condition subsequent in the deed.

It is our conclusion that the trial court was correct when it held that "condition" No 8, the only condition subsequent in the deed, had been met in 1926 when the city of Grand Rapids accepted the property. Having reached this conclusion, it is unnecessary to discuss whether or not the other covenants in the deed have been carried out. For any breach of the other covenants, plaintiffs' remedy is not an action in ejection, but in a court of chancery.

Even though there may have been no breach of express conditions subsequent, plaintiffs argue that the facts in the instant case indicate an abandonment of the property by the city of Grand Rapids so as to work a reverter to the heirs of the grantor, Jacob Aman. In *Kirchen* v. *Remenga,* 291 Mich 94, there was a dedication of a tract within a subdivision for park purposes, a dedication which had not been accepted by the county, but was so regarded by surrounding landowners. It was held that the burden of proof that the use as a park had been abandoned was on the party asserting it and was not sustained even when a hotel, grocery store, boat livery, powerhouse, and other buildings were built thereon when it was not shown that the use for which the property was dedicated *had wholly failed.* In *Ford* v. *City of Detroit,* 273 Mich 449, we held that neither misuse nor nonuse will be sufficient to constitute an abandonment of land dedicated to public use so as to work a reverter to the dedicators. The city of Detroit had converted part of property dedicated for a parkway into a roadway. The acts of the city in removal of trees and shrubbery, excavation and condemnation proceedings were held a misuser but not an abandonment entitling holders of the right of reverter to maintain ejectment. This was in the face of a provision in a deed to the parkway that should the use of the parkway cease, it should revert to the dedicators.

We agree with the trial court that *Ford* v. *City of Detroit, supra,* is controlling here. Plaintiffs argue that the *Ford Case* does not apply as the Aman deed was to a private corporation in trust for a municipality, not to the public. For all practical purposes, however, the Aman deed was a dedication to the public for it contained the express condition that the property be turned over to the city of Grand Rapids. A dedication is merely an appropriation of land to

some public use, accepted for such use by or in behalf of the public. *Hayes* v. *Livingston,* 34 Mich 384 (22 Am Rep 533); *Alton* v. *Meeuwenberg,* 108 Mich 629. The acceptance of the property by the city of Grand Rapids in 1926 completed the dedication. Plaintiffs here argue that the cases are not analogous as the *Ford Case* involved a statutory dedication and if the Aman transaction is a dedication it is by virtue of the common law. We see no reason to distinguish between the 2 types of dedication for the purposes of the law of abandonment. It is clear that the need for certainty of title exists equally in both instances. There is even less basis for finding a reverter here than in the *Ford Case,* in which there was an express reverter clause. The neglect of the property was not sufficient to constitute an abandonment.

Plaintiffs allege that the transfer to the State constituted an abandonment of the property by the city of Grand Rapids. It is true that in certain cases a sale may constitute an abandonment. In *Kent County Board of Supervisors* v. *City of Grand Rapids,* 61 Mich 144, land was dedicated for county seat purposes. The county seat was removed from the land and the county sold the courthouse to the owner of the fee. It was held that the county had abandoned all control of the site. *Patrick* v. *Young Men's Christian Association of Kalamazoo,* 120 Mich 185, involved a similar situation. A church society had erected a building on a lot dedicated to the use of certain churches. It then conveyed the lot to a YMCA which demolished the church building and erected a building adapted to its own wants. It was held that the sale constituted an abandonment of the use for which the lot was dedicated. No such abandonment exists in the instant case. The transfer to the State was made for uses *within the stipulation of title* and the State, when it felt it might not be able

to conform thereto, deeded the property back to the city which undertook the defense of the use of the property for park and boulevard purposes. In none of these transfers was there an abandonment of the use for which the property was dedicated, as took place in *Kent County Board of Supervisors* v. *City of Grand Rapids, supra,* and *Patrick* v. *Young Men's Christian Association, supra*. A park may be a woodland preserve as well as a landscaped playground. To quote a few of the definitions of "park" from Black's Law Dictionary (3d ed), at p 1325:

"A pleasure ground for the recreation of the public to promote its health and enjoyment. * * * A piece of ground enclosed for purposes of pleasure, exercise, amusement, or ornament. * * * A place for the resort of the public for recreation, air and light; a place open for everyone."

These definitions are inclusive of any of the purposes for which the Aman tract has been used or was intended to be used throughout the years.

The relinquishment of any claim the city might have had to the adjoining right-of-way was at least partly motivated by a desire to preserve the west side of the park in a natural state and can hardly be construed, by itself, to constitute an abandonment of the right to use the entire park in any manner.

We conclude then that the uses for which the property has been dedicated have not wholly failed, and there has been no abandonment.

Plaintiffs also argue that the conservation commission had no power to grant the property in question back to the city of Grand Rapids. We seriously doubt the propriety of this discussion as it is not raised in the statement of questions involved or the reasons and grounds for appeal. But even so we must agree with defendant that if there is any possible question as to the power of the conservation com-

mission to reconvey, it can only be raised by the
State, not by the plaintiffs who must stand or fall
on the strength of their own title and who may not
recover because of any alleged weakness in the title
of the defendant.

If the city government has failed to perfectly per-
form the obligations assumed in the acceptance of
this gift, a court of equity has the power to compel
such performance.

The judgment of the trial court is affirmed.   Costs
to defendant.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and
REID, JJ., concurred.

The late Chief Justice NORTH did not sit.